ORDERED in the Southern District of Florida on _July 3, 2007_

Tagged Opinion

_Laurel Myerson Isicoff, Judge_
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 06-10634-BKC-LMI |
| SOUTH BEACH COMMUNITY HOSPITAL, LLC, | Chapter 11 |
| Debtor._____/ | |
| IN RE: | CASE NO. 07-1210-BKC-LMI |
| ALAN L. GOLDBERG, Chapter 11 Trustee for South Beach Community Hospital, LLC, | |
| Plaintiff, | |
| vs. | |
| MOUNT SINAI MEDICAL CENTER OF GREATER MIAMI, INC., a Florida corporation, | |
| Defendant._____/ | |

### ORDER DISCHARGING ORDER TO SHOW CAUSE ISSUED TO WILLIAM P. SMITH, ESQ.

This matter came before this Court on June 20, 2007 on the Court's Order to Show Cause Why William P. Smith Should Not Be Suspended From Practice Before this Court, including revocation of his *pro hac vice* admission.

**Factual Background**

On February 27, 2006, South Beach Community Hospital, LLC (the "Debtor") filed for protection under Chapter 11 of the United States Bankruptcy Code. At the time of the filing, South Beach Community Hospital was an unoccupied hospital located in Miami Beach, Florida, whose license to operate was subject of a complaint for revocation filed by the Florida Agency for Healthcare Administration ("AHCA"), the state licensing agency. Ultimately the Debtor negotiated with AHCA and the complaint was dismissed.

On August 8, 2006, the Debtor moved for appointment of a chapter 11 trustee, and the Office of the U.S. Trustee appointed Mr. Alan Goldberg. On September 25, 2006 Mr. Goldberg filed a motion authorizing the sale of substantially all of the Debtor's assets (CP #200), including the license, to Hospital of South Beach, LLC ("HOSB") subject to higher and better bids. There was an auction at which HOSB was the successful bidder. Mount Sinai Medical Center of Florida, Inc. ("Mount Sinai"), which operates a large hospital on Miami Beach, was an early potentially interested suitor, who ultimately bought a small ($483.00) claim, but did not participate in the auction. A condition of the sale that was approved was the transfer of the license from the Debtor to the successful purchaser. An outside closing date of June 30, 2007 was set.[1]

During the course of the license transfer process (hereafter the "CHOW[2] Application Process"), and two days before the Debtor's license was to expire on February 28, 2007, the Trustee applied for a renewal of the license, which was granted

---

[1] This deadline has recently been extended, due, in part, to the delays in the process caused by some of the events described in this Order.
[2] CHOW stands for Change of Ownership.

2

by AHCA on March 30, 2007, retroactive to February 28, 2007. Thus, the license did not expire.

Mount Sinai filed a Petition for Formal Administrative Proceeding seeking rescission of the renewal of the Debtor's license. Mount Sinai also filed a Petition to Intervene in the CHOW Application approval process. The Trustee also alleged that Mount Sinai contributed to at least one Miami Herald article, claiming the license had expired. In response to these actions, the Trustee filed an Emergency Motion of Chapter 11 Trustee for Order Requiring Mount Sinai Center of Greater Miami, Inc. to Appear and Show Cause Why it Should Not Be Held in Contempt for Violation of the Automatic Stay (the "Contempt Motion") (CP #344) in the main bankruptcy case and filed this adversary proceeding, seeking a preliminary injunction enjoining Mount Sinai from proceeding any further in the administrative process, and also filed an Emergency Motion for Temporary Restraining Order (the "TRO Motion")(CP #2). The Motion for Contempt and the TRO Motion were set for hearing on May 7, 2007.

On May 7, 2007 Mr. Smith filed a motion, which was granted, seeking authorization to appear before the Court *pro hac vice*. In accordance with the Local Rules of the Bankruptcy Court for the Southern District of Florida, in his *pro hac vice* motion Mr. Smith certified that "he is familiar with and shall be governed by the local rules of this court, the rules of professional conduct and all other requirements governing the professional behavior of members of the Florida Bar."

During the hearing on May 7, while arguing to the Court, Mr. Smith made the following comment – "I suggest with respect, Your Honor, that you're a few French fries short of a Happy Meal in terms of what's likely to take place."

3

## The Order to Show Cause

Based on Mr. Smith's comment and conduct at the hearing, the Order to Show Cause was issued by this Court on May 21, 2007 pursuant to Local Rule 2090-2, which provides that, upon 30 days notice, an attorney's right to appear before the Bankruptcy Court in the Southern District of Florida may be revoked.

In the preamble of the Florida Bar Rules of Professional Conduct of the Rules Regulating the Florida Bar (the "Florida Bar Rules") it is noted –

> A lawyer is a member of the legal profession, is a representative of clients, an officer of the legal system, and a public citizen having special responsibility for the quality of justice. . . . A lawyer should demonstrate respect for the legal system and for those who serve it, including judges, other lawyers and public officials.

Rule 4-3.5 of the Florida Bar Rules - Impartiality and Decorum of the Tribunal - sets forth certain requirements for conduct in the courtroom. The comments to this section observe that "refraining from abusive or obstreperous conduct is a corollary of the advocate's right to speak on behalf of litigants."

There are also extensive guidelines for professionalism that have been promulgated by the Florida Bar Henry Latimar Center for Professionalism that, among other things, admonish attorneys to "avoid undignified or discourteous conduct which is degrading to the court."

The license to practice law is a privilege, not a right, and the right to appear in a courtroom as a visitor is a special privilege that carries its own set of responsibilities, including, in this jurisdiction, as well as all others of which the Court is aware, familiarity with the applicable local rules and guidelines for practice. However, there is nothing unique about the Florida rules governing the conduct of attorneys. Indeed, the Court is

4

confident that there is no jurisdiction in the United States, including in the district where Mr. Smith regularly practices, where the expression and tone Mr. Smith used would fall within the bounds of professional behavior.

At the hearing on May 7 Mr. Smith had obvious concerns regarding the Court's understanding of a particular situation but, rather than expressing himself in a manner appropriate for an officer of the court, addressed this Court in an extremely disrespectful manner. Mr. Smith has the right, and the obligation, to put forth his arguments on his client's behalf, and to voice, when appropriate, and in an appropriate manner, his disagreement with a court's interpretation.  However, as acknowledged by Mr. Smith during the Show Cause hearing, nowhere in the rules of professionalism, or civility for that matter, is there a justification for the manner in which Mr. Smith addressed this Court, no matter how legitimate the underlying sentiment might have been.  As evidenced by Mr. Smith's tone and demeanor, Mr. Smith's use of the phrase was intentional and was not meant in jest.  Furthermore, there was no attempt by Mr. Smith at any time to retract, or apologize for, his poor choice of words or manner.

The Court has an inherent right – in fact, duty – to protect the integrity of the judicial process.  See *In re Sunshine Jr. Stores, Inc.*, 456 F.3d 1291 (11th Cir. 2006); *Dolphin Plumbing Co. of Florida, Inc.  v. Financial Corp. of No. America*, 508 F.2d 1326 (5th Cir. 1975). Law is a profession, and judges and attorneys alike are charged with the responsibility to keep that profession, and the institution it serves, above question or reproach from those who seek its protections.  If "we who labor here" fail to treat this institution with respect, then how can we expect those who are relying on the court for relief find comfort in the processes in which they become involved?

5

The nature and extent of the appropriate response to inappropriate behavior is left to the discretion of the judge, measured by the conduct at issue as well as the attorney's response to the censure.

> The power of a court to maintain order and to correct improper behavior in its own proceedings is without dispute. ... So long as the bounds of reason are not severed, a court is allowed to decide for itself the most effective and appropriate method for maintaining order and respect in a particular proceeding.

*In re Kruckenberg,* 1994 WL 732527, at *2 (D. Kan. 1994).

There are several cases in which an attorney's failure to conduct himself or herself professionally, including addressing the court or participants disrespectfully, has resulted in sanctions. Depending on the circumstances surrounding the contemptuous behavior, courts have placed attorneys in jail, prohibited them from practicing in the particular district for times ranging from one to three years, fined them, or required them to attend professionalism classes. *See, e.g., U.S. v. Engstrom (In re Cohan)*, 16 F.3d 1006 (9th Cir. 1994)(Attorney's *pro hac vice* status, and permission to practice in the Western District of Washington, suspended for a period of three years based on several disrespectful comments made to the court during a trial); *Castillo v. St. Paul Fire & Marine Ins. Co. (In re Walker)*, 828 F. Supp. 594, 604 (C.D. Ill. 1992)(Attorney's right to practice in federal court suspended for one year based on behavior at a deposition, the inappropriateness of which the attorney refused to acknowledge, not as a sanction, but due to court's finding counsel had "disrespect and disregard for the norms and traditions of the legal system."); *In re Kruckenberg*, 1994 WL 732527 (attorney directed to complete twelve hours of continuing legal education, six of which must be in ethics, based on unprofessional conduct during an evidentiary hearing); *U.S. v. Cleveland,*

6

1997 WL 539664, at *3 (E.D. La. 1997) (attorney fined $7500 based on sidebar behavior the court found "intemperate, unprofessional, and threatening to the integrity of the judicial process", which behavior the attorney refused to acknowledge was inappropriate.)

At the Show Cause hearing, Mr. Smith, through counsel, and directly, and Mr. Smith's partner, Harvey Freishtat, Chairman of McDermott, Will & Emery, each offered their sincere apologies for what occurred and acknowledged there was no justification or excuse for Mr. Smith's behavior. Mr. Smith acknowledged the inappropriateness of the remark. Both Mr. Smith and Mr. Freishtat described self-imposed remedies for Mr. Smith personally and for the firm, including a renewed and increased commitment to pro bono service, a donation to a charity of Mr. Smith's choosing, and Mr. Smith's attendance at a five hour on-line professionalism course offered by The Florida Bar. As noted at the Show Cause hearing, while the Court recognizes these efforts and applauds them, they cannot substitute for what this Court believes is appropriate and necessary.

However, notwithstanding that Mr. Smith's conduct was intentional, because the Court finds that Mr. Smith is sincerely remorseful about what occurred and that the apologies that were extended were sincere, and in reliance on Mr. Smith's statement on the record that he has neither addressed such an expression to a judge previously, nor had his *pro hac vice* status revoked previously, this Court finds that, rather than revoking Mr. Smith's right to appear in the Bankruptcy Court for the Southern District of Florida, it is more appropriate to require Mr. Smith to attend a full day professionalism course offered by The Florida Bar. Because Mr. Smith did, in fact, attend a five hour

7

professionalism course, it is not necessary for Mr. Smith to attend a second lengthy course.

Accordingly, it is ORDERED and ADJUDGED that upon Mr. Smith's filing of a certificate of completion evidencing that he did, in fact, attend a five hour on-line professionalism course offered by The Florida Bar, the Order to Show Cause will be discharged.

# # #

Copies furnished to:

Honorable Paul G. Hyman
Honorable A. Jay Cristol
Honorable Robert A. Mark
Honorable Steven B. Friedman
Honorable Raymond B. Ray
Honorable John K. Olson
Katherine Gould-Feldman, Clerk of Court
Steven Turner, Asst. U.S. Trustee
Paul Battista, Esq.
Steven Siff, Esq.
Gary Matzner, Esq.
Ross Hartog, Esq.
Alan Goldberg, Trustee
Arthur Rice, Esq.
Patricia Redmond, Esq.
Melinda Thornton, Esq.
Lewis Fishman, Esq.
Stuart Lavin, Esq.
Grant Dearborn, Esq.
Bevin Brown, Esq.